UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEHAVIOUR INTERACTIVE, INC.<br>Plaintiff,<br>-against-<br>UNDEFEATED, INC.<br>Defendant. | 26-CV-00432<br><br>OPINION & ORDER |

Before the Court is Defendant Undefeated, Inc.'s ("Undefeated") motion to dismiss the Complaint filed by Plaintiff Behaviour Interactive ("Behaviour")[1] for lack of subject matter jurisdiction. (See Dkt. 17.) For the reasons set forth below, Undefeated's motion is GRANTED.

## BACKGROUND

### A. Factual Allegations

The following facts are drawn from the Complaint and the declarations submitted on the instant motion. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56–57 (2d Cir. 2016). Furthermore, the Court assumes all well-pleaded allegations in the

[1] See Dkt. 1 ("Compl."). In resolving the instant motion, the Court has also considered Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem.") (Dkt. 18); the Declaration of Jayson M. Lorenzo ("Lorenzo Decl.") (Dkt. 19); Plaintiff's Opposition ("Pl. Opp.") (Dkt. 23); the Declaration of Molly R. Littman-Johnson ("Littman-Johnson Decl.") (Dkt. 24); the Declaration of J. Robert LeBlanc ("LeBlanc Decl.") (Dkt. 25); Defendant's Reply Memorandum ("Def. Reply") (Dkt. 27); and the Declaration of Jayson M. Lorenzo in Support of Defendant's Reply ("Lorenzo Reply Decl.") (Dkt. 28).

Complaint to be true and resolves any extrinsic factual disputes in Behaviour's favor.[2]

Behaviour is a video game developer and the creator of a video game known as Dead by Daylight. (Compl. ¶ 2.) Behaviour's logo for the game, the "Skulls Scratch Logo," consists of four vertical slashes with a skull atop each and a horizontal slash across them. (Id. ¶ 27.) In 2021, Behaviour simplified the logo by filling in the skulls (the "Modernized Scratch Logo"). (Id. ¶ 30.) Behaviour holds three U.S. Patent and Trademark Office ("USPTO") registrations for the Skulls Scratch Logo, the first of which was registered on March 3, 2020. (Id. ¶ 28.) Behaviour first used the Modernized Scratch Logo in 2021 and applied to register it on June 29, 2023. (Id. ¶¶ 30–33.)

Undefeated is a sneaker and apparel brand. (Id. ¶ 5.) Undefeated owns thirteen United States trademark registrations for

[2] Undefeated does not state in its papers whether it mounts a facial or fact-based Rule 12(b)(1) motion (or both). Whereas a facial challenge limits the Court to the pleadings, in a fact-based challenge, a defendant may proffer evidence beyond the pleadings—as Undefeated has done here—and thus shift the burden to the plaintiff to come forward with evidence if the affidavits identify jurisdictional defects. In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations, and the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." Sullivan v. Banks, No. 24-CV-3251 (LJL), 2026 WL 2283655, at *2 (S.D.N.Y. Aug. 7, 2026) (citation omitted) (internal quotation marks omitted); Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek, 600 F.3d 171, 175 (2d Cir. 2010). The Court need not resolve any factual disputes because, even accepting Behaviour's allegations and declarations as true, the Court finds that Behaviour has nonetheless failed to allege plausibly (let alone prove) the existence of subject-matter jurisdiction. Accordingly, the Court recounts the facts as alleged in the Complaint and Behaviour's declarations.

its "Five-Strike" mark across twelve classes. The first such mark was registered in 2008. (Lorenzo Decl. ¶ 13.)

On February 1, 2024, Undefeated's counsel emailed Behaviour's counsel to identify an apparent trademark dispute between the parties in Australia. Counsel for Undefeated stated that Undefeated was "planning on taking additional action" as to similar trademarks in the United States and globally. (Compl. ¶ 37; LeBlanc Decl. ¶ 2, Ex. A.) From approximately February 2024 through October 2024, both parties exchanged various phone calls and emails discussing their respective trademark applications and registrations and potential resolutions. (Lorenzo Decl. ¶ 3.) After Behaviour's counsel moved to a different law firm, discussions resumed in February 2025. (Id. ¶ 4.) Among other things, the parties discussed potential limitations and restrictions on use of the mark and trade channels. (Id. ¶¶ 3-4; LeBlanc Decl. ¶ 5.)

While these discussions were ongoing, Undefeated filed two cancellation proceedings and one opposition against Behaviour's marks before the U.S. Trademark Trial and Appeal Board ("TTAB"). Specifically, on March 4, 2025, Undefeated petitioned the TTAB to cancel one of Behaviour's registrations for the Skulls Scratch Logo. (Compl. ¶ 38.) Several months later, on December 31, 2025, Undefeated petitioned the TTAB to cancel a second Skulls Scratch Logo registration held by Behaviour. (Id. ¶ 41.)

Both of Undefeated's TTAB proceedings allege, in relevant part, that "any use" of Behaviour's mark would falsely suggest a connection with Undefeated. (Id. ¶¶ 38, 40-41.) Undefeated also served document discovery requests in the TTAB proceeding seeking, among other things, Behaviour's sales channels, manufacturers, sales volume, and advertising, which Undefeated's counsel described as relevant to "the scope and breadth of [Behaviour's] use of its mark." (Id. ¶ 43; Littman-Johnson Decl. ¶¶ 6-7, Ex. 5.)

Behaviour further alleges that on or about June 16, 2025, in connection with those TTAB proceedings, Undefeated's counsel held a phone call with Behaviour's counsel and stated that "Undefeated does not have any problem suing Behaviour" and that he could "have Undefeated file a lawsuit against Behaviour." (Compl. ¶ 42.) As represented by Behaviour's counsel, Undefeated's counsel made these statements in response to Behaviour's claim that the use limitations Undefeated sought were beyond the scope of the TTAB proceedings and that, even if Undefeated prevailed before the TTAB, the result would not affect Behaviour's real-world use of the mark. (LeBlanc Decl. ¶ 8.)[3]

[3] Undefeated disputes this account of events and maintains that its counsel said only that no infringement claim was being made at that time and that Undefeated would enforce its rights if the need arose. (Lorenzo Decl. ¶ 6; Lorenzo Reply Decl. ¶ 4.) For the purposes of the instant motion, the Court accepts Plaintiff's account.

**B. Procedural History**

On January 16, 2026, Behaviour filed this action. At a high level, the Complaint seeks three declaratory judgments that Behaviour's use of the marks in question (i) does not infringe Undefeated's mark (Count One); (ii) does not dilute Undefeated's mark (Count Two); and (iii) does not falsely suggest a connection with Undefeated (Count Three). (Id. ¶¶ 72–103.) As to subject-matter jurisdiction, the Complaint alleges that Behaviour has a reasonable apprehension that it will be sued by Undefeated in light of the TTAB proceedings and the parties' out-of-court discussions. (Id. ¶ 15.)

## LEGAL STANDARD

**A. Rule 12(b)(1)**

"A case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject[-]matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011).

A motion to dismiss under Rule 12(b)(1) may be either "facial" or "fact-based." Carter, 822 F.3d at 56. Where the motion is facial, the court accepts the material allegations of the Complaint

as true and draws all reasonable inferences in the plaintiff's favor, asking whether the pleading alleges facts that affirmatively and plausibly suggest jurisdiction. Id. In the case of a fact-based challenge, however, a defendant may proffer evidence beyond the pleadings, in which case the plaintiff may rest on its allegations unless the defendant's evidence contradicts them. Carter, 822 F.3d at 57. In either case, jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

**B. Article III Jurisdiction and the Declaratory Judgment Act**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act's reference to a "case of actual controversy" is coextensive with "the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citation omitted).

The key jurisdictional question for any federal declaratory suit is thus whether the facts alleged, taken as a whole, show that there is a "substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 92 (2d Cir. 2023) (quoting MedImmune, 549 U.S. at 127). Under MedImmune and its progeny, "the threat of future litigation remains relevant in determining whether an actual controversy exists." Nike, Inc. v. Already, LLC, 663 F.3d 89, 96 (2d Cir. 2011), aff'd, 568 U.S. 85 (2013). But where, as here, a "plaintiff seeks a declaratory judgment of non-infringement of a defendant's trademarks," there is no actual controversy unless the plaintiff affirmatively shows "that the defendant sought or threatened to seek to prohibit [the] plaintiff's use of its mark." I.O.B. Realty, Inc. v. Patsy's Brand, Inc., No. 19 Civ. 2776 (AT), 2020 WL 2086096, at *2 (S.D.N.Y. Apr. 30, 2020) (citing Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124, 125 (2d Cir. 1963)).

It is "well-settled within this Circuit that the existence of a dispute before the TTAB over the registration of a party's mark, on its own, is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action." Transcend Cruises Inc. v. Transcendent Travel Servs., LLC, No. 25-CV-8796 (PKC), 2026 WL 1430343, at *3 (S.D.N.Y. May 21, 2026) (quoting Halo Lifestyle LLC v. Halo Farm, Inc., 18-cv-9459 (PAE), 2019 WL 1620744, at *3 (S.D.N.Y. Apr. 16, 2019)); see also 1-800-Flowers.com, Inc. v. Edible Arrangements, LLC, 905 F. Supp. 2d

451, 454 (E.D.N.Y. 2012) (collecting cases); Topp-Cola, 314 F.2d at 126 (holding that the filing of a TTAB opposition, even if premised on likelihood of confusion, "is not by itself a charge or warning of a future charge of infringement").

## DISCUSSION

Undefeated argues that the TTAB proceedings and the parties' negotiations do not establish a substantial controversy of sufficient immediacy and reality. (Def. Mem. at 4-11.) Undefeated has submitted declarations in support of its motion, and Behaviour has responded with declarations of its own. As noted, the Court need not resolve any factual conflict between the competing declarations because, even accepting the allegations of the Complaint and the declarations of Behaviour's counsel as true, the facts alleged do not show an actual controversy.

### A. TTAB Proceedings

It is beyond dispute that the TTAB proceedings that Behaviour identifies are insufficient, standing alone, to establish an actual controversy or genuine threat of litigation sufficient for Article III jurisdiction. Topp-Cola, 314 F.2d at 126; Halo Lifestyle LLC v. Halo Farm, Inc., No. 18 Civ. 9459 (PAE), 2019 WL 1620744, at *3 (S.D.N.Y. Apr. 16, 2019); 1-800-Flowers, 905 F. Supp. 2d at 454. Nonetheless, the TTAB proceedings are properly considered in the overall factual context that the Court must

consider in assessing whether Behaviour has plausibly alleged subject-matter jurisdiction.

To that end, Behaviour argues that the language of Undefeated's TTAB filings evinces a threat of future litigation, pointing primarily to the repeated references to Behaviour's "use" of its marks. (Pl. Opp. at 18-20.) Courts in this District have rejected similar arguments. See, e.g., Halo Lifestyle, 2019 WL 1620744, at *4 (finding that allegations regarding "use" in TTAB filings provided context but were "not tantamount to a threat of litigation"); I.O.B. Realty, 2020 WL 2086096, at *3 (holding that TTAB allegations of likely "confusion, mistake or deception" merely set forth the standard for registration proceedings (id.) and, "without more," do not "constitute an indirect threat of an infringement suit" (quoting Progressive Apparel Grp., Inc. v. Anheuser-Busch, Inc., No. 95 Civ. 2794, 1996 WL 50227, at *2 (S.D.N.Y. Feb. 8, 1996))). On the contrary, allegations of competing use are routine in registration proceedings given that likelihood of confusion is a statutory ground for the TTAB to refuse a registration. See 15 U.S.C. §§ 1052(d), 1063(a).

Behaviour also argues that Undefeated's requests for discovery in the TTAB proceeding—including those concerning Behaviour's sales channels, manufacturers, and sales and advertising figures—reveal an intent to challenge Behaviour's use rather than its registration. (Compl. ¶ 43.) But discovery

directed to such subjects is part and parcel of any TTAB opposition that argues a likelihood of confusion. It does not signal an intent to commence litigation in an Article III court.[4]

Accordingly, the Court finds the TTAB proceedings provide little to no indication that Behaviour faces a threat of litigation sufficient for Article III standing purposes.

**B. The Parties' Communications**

Beyond the TTAB proceedings, Behaviour principally argues that the June 16, 2025 telephone call between counsel amounted to a threat of suit. (Pl. Opp. at 9, 13–14.) On Behaviour's account, after Behaviour's counsel stated that the TTAB proceedings would not affect Behaviour's real-world use of its marks, Undefeated's counsel responded that "Undefeated does not have any problem suing Behaviour" and that counsel could do so. (LeBlanc Decl. ¶ 8.)

[4] The cases in which courts in this Circuit have found an actual controversy involved a TTAB proceeding plus a cease-and-desist letter or an explicit threat of suit. See, e.g., Classic Liquor Imps., Ltd. v. Spirits Int'l B.V., 151 F. Supp. 3d 451, 457 (S.D.N.Y. 2015) (finding actual controversy where defendant's letter stated that plaintiff's "proposed registration and use of the confusingly similar trademarks ROYAL ELITE will amount to unlawful infringement and dilution of [defendant's] registered trademark rights" and threatened to "vigorously protect" its marks if plaintiff did not cease and desist) (emphases added); Am. Time Exch., LLC v. Tissot SA, No. 17-CV-4737 (VM), 2017 WL 4712634, at *2 (S.D.N.Y. Sept. 27, 2017) (finding actual controversy where "there was a TTAB opposition that included allegations regarding confusion in addition to cease-and-desist letters") (emphasis added), abrogated on other grounds by Admiral Insurance, 57 F.4th 85, 98 n.8 (2d Cir. 2023); Sasson v. Hachette Filipacchi Presse, No. 15-CV-00194, 2016 WL 1599492, at *3 (S.D.N.Y. Apr. 20, 2016) (finding that TTAB proceedings, settlement negotiations, and a cease-and-desist letter together established a substantial controversy). Here, by contrast, Plaintiff does not allege that Undefeated ever sent a cease-and-desist letter or otherwise issue a formal legal demand that Behaviour stop using the marks under threat of litigation, notwithstanding Behaviour's use of the marks for a decade. (See Compl. ¶¶ 4, 53; LeBlanc Decl. ¶ 5.)

Courts in this District have considered whether an actual controversy exists under such circumstances, where the parties exchange communications (and often veiled threats) regarding trademark registrations. In Halo Lifestyle, for example, the court found no cognizable controversy where the plaintiff alleged that the defendant's president had "implicitly made clear that [it] intended to pursue [the plaintiff] in court," because the claim rested on emails and phone calls discussing "potential coexistence arrangements regarding the parties' use and registration of their respective trademarks" and the defendant's "enforcement efforts against another company with similar marks." 2019 WL 1620744, at *4 (internal quotation marks omitted). Similarly, in 1-800-Flowers, the court held that defense counsel's "isolated and rather general comment" during a telephone call that her client objected to the plaintiff's use of its marks was insufficient, alone or in combination with the pending TTAB oppositions, to establish an actual controversy. 905 F. Supp. 2d at 457-58.

These cases stand for the proposition that isolated and ambiguous remarks between counsel in the course of ongoing registration and settlement discussions, especially those made in the midst of a TTAB proceeding, do not establish an Article III case or controversy under MedImmune. So too here. Even accepting Behaviour's account, counsel's purported remark was a single comment made in response to Behaviour's counsel's assertion that

the TTAB proceedings would not affect Behaviour's use of its marks. (LeBlanc Decl. ¶ 8.) Reserving rights to sue at some undefined point in time is a far cry from a cease-and-desist letter or other imminent threat of litigation. See Halo Lifestyle, 2019 WL 1620744, at *4 (finding that "threadbare factual allegations" of a single implied threat "fall short of supporting [the plaintiff's] claim of an actual case or controversy"). Certainly, Undefeated was not obliged "to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit" against Behaviour. I.O.B. Realty, 2020 WL 2086096, at *3 (internal quotation marks omitted).[5]

Indeed, the paucity of allegations from Behaviour is particularly notable given that the parties engaged in nearly two years of discussions regarding the mark dispute between February 2024 and the filing of this lawsuit in January 2026. During that period, Undefeated had ample opportunity to send a cease-and-desist letter or otherwise communicate a credible threat of litigation, which it did not. As in 1-800-Flowers, the Court finds that the isolated comments from counsel alleged by Behaviour are

---

[5] Behaviour also points to a February 2024 email from Undefeated as evidence of a threat of litigation. (Pl. Opp. at 7-8; LeBlanc Decl. ¶ 2, Ex. A.) That email, however, was sent more than a year before the first TTAB proceeding and nearly two years before this action. Moreover, the email at issue merely states that Undefeated was "planning on taking additional action" with respect to trademarks in the United States and elsewhere. (LeBlanc Decl. Ex. A.) The Court agrees that such a vague and attenuated comment cannot create an Article III controversy. MedImmune, 549 U.S. at 127.

insufficient to show the existence of a case or controversy. See 905 F. Supp. 2d at 457-58.

Finally, Behaviour points to alleged discussions of use limitations during settlement negotiations. The Court finds that argument equally unpersuasive. See Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F. Supp. 2d 391, 396-97 (S.D.N.Y. 2011) (finding no actual controversy where a cease-and-desist letter and TTAB opposition were "accompanied by settlement negotiations touching on use of the disputed mark," because "[s]ettlement negotiations are just one factor in a totality of circumstance[s]"). Such haggling no doubt occurs on a daily basis between trademark holders seeking deconfliction with their competitors. Presumably many of those discussions involve hard bargaining. But sharp elbows do not create a justiciable controversy where there is otherwise none. On the contrary, "parties should be encouraged to engage in interest-based negotiation without making a federal case out of it." Id.

Because the TTAB proceedings and the parties' pre-suit communications, do not, separately or together, plausibly allege a substantial controversy of sufficient immediacy and reality, the

Court concludes that it lacks subject-matter jurisdiction over this action.[6]

### C. Discretion Under the Declaratory Judgment Act

Even if the Court had subject-matter jurisdiction under Article III, however, it would independently decline to exercise it. It is well-settled that a district court's exercise of jurisdiction under the Declaratory Judgment Act is discretionary, Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 505 (2d Cir. 1968), which federal district courts retain "broad discretion" to decline to exercise, see Admiral Insurance 57 F.4th at 99–100. Here, the only concrete dispute between the parties can be largely resolved in the TTAB proceedings, which remain pending and may well obviate any future disputes that are actionable in federal court. See Vina Casa, 784 F. Supp. 2d at 397 & n.2 (declining to exercise jurisdiction where the registrability dispute could be resolved before the TTAB).

[6] Behaviour also points to a February 5, 2026 settlement communication in which Undefeated's counsel stated that "[Behaviour's] use of a solid black hash mark alone is confusing." (Pl. Opp. at 10; Littman-Johnson Decl. ¶ 9.) That statement post-dates the Complaint and cannot supply jurisdiction that did not exist when the action was filed. See Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570 (2004). In any event, an objection voiced in settlement discussions is no more a threat of suit than the communications discussed above.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED and the case is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.[7]

The Clerk of Court shall close Dkt. 17, enter judgment, and terminate this case accordingly.

**SO ORDERED.**

Dated: New York, New York
September 23, 2026

LORETTA A. PRESKA
Senior United States District Judge

---

[7] "[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." Carter, 822 F.3d at 54.